NOT FOR PUBLICAITON

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MURPHY et al,** | **Civil Action No. 20-10397 (GC)** |
| **Plaintiff,** | |
| **v.** | |
| **TOWNSHIP OF MILLSTONE, NEW JERSEY et al,** | **MEMORANDUM OPINION** |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court are three related motions.  (Docket Entry Nos. 26, 32, and 40.)  On February 2, 2022, OnSite Landscape Management, EEM, LLC and Dan Murphy ("Plaintiffs") filed a Motion to Amend/Correct the Complaint.  (Docket Entry No. 26.)  Defendant, Township of Millstone ("Millstone"), filed a Cross Motion to Strike and for Disqualification of Plaintiffs' Counsel on March 7, 2022.  (Docket Entry No. 32.)  Millstone filed a second motion, a Motion to Seal, on April 7, 2022.  (Docket Entry No. 40.)  The Court has fully reviewed and considered all arguments for and against each motion pending before the Court.  The Court considers the motions without oral argument pursuant to L.Civ.R. 78.1(b).

## I.    Background and Procedural History

The Court presumes a familiarity with the nature and history of this litigation.  As a result, not all factual details leading to the filing of this case are recited herein.  Instead, the Court focuses on the facts most relevant to the pending motions.

Plaintiffs commenced this action on August 12, 2020.  (Docket Entry No. 1.)  Service of initial written discovery was to be completed by November 20, 2020.  (Docket Entry No. 7.)  Each party was to submit answers to initial written discovery by January 20, 2021.  (*Id.*)  Fact discovery was to be completed no later than May 20, 2021.  (*Id.*)  Plaintiffs served Defendants with Plaintiffs' discovery requests on either October 26, 2020 (Docket Entry No. 26), or October 29, 2020 (Docket Entry No. 10).  Millstone produced their discovery requests on November 12, 2020.  (Docket Entry No. 26.)  During a Telephone Conference with the Court on January 20, 2021, the Court extended the deadline to produce discovery to February 19, 2021.  (*See* Text Minute Entry of 01/20/2021.)  Plaintiffs responded to Millstone's discovery requests on February 8, 2021.  (*Id.*)

On March 3, 2021, Plaintiffs' counsel filed a letter with the Court concerning Defendants' failure to respond to Plaintiffs' discovery requests.  (Docket Entry No. 10.)  Counsel for named Defendant, Dan Specht, Millstone's Code Enforcement Officer, responded to Plaintiffs' March 3, 2021, letter, on March 5, 2021, on behalf of all Defense counsel.  (Docket Entry No. 12.)  Mr. Specht's counsel, John T. Bazzurro, indicated that Defendants were working in unison concerning the provision of discovery.  (*Id.*)  Mr. Bazzurro provided that Defendants would submit "fully responsive answers and fully responsive documentation on or before the close of business on Wednesday, March 10, 2021." (*Id.*)  Further, Mr. Bazzurro shared with the Court that "diligent searches" were performed by Defendants, "which took longer than expected," and yielded approximately 6 GB of documents and files," which were delivered to his office.  (*Id.*)  Consequently, the documents needed to be reviewed and responses finalized in conjunction with the documents, and, as a result, discovery was "unfortunately, delayed." (*Id.*)  On March 10, 2021, Mr. Specht responded to Plaintiffs' discovery requests.  (Docket Entry No. 26.)

On May 10, 2021, Millstone's counsel, John Bonello, submitted a written status update as to the production of Millstone's discovery responses and indicated that Millstone hired an "IT person" to search its servers for the specific search terms Plaintiffs requested.  Mr. Bonello advised the Court that the search was a lengthy process and shared that he was "not in a position to advise the Court when [the] process [would] be complete."  (*Id.*)  The Court instructed Defendants to produce outstanding discovery "as swiftly as possible."  (Docket Entry No. 14.)

On June 15, 2021, Millstone produced its Interrogatory responses to Plaintiffs.  (Docket Entry No. 26.)  Millstone did not produce document responses.  (*Id.*)  The Court met with the parties on June 16, 2021 and directed Plaintiffs and Millstone to meet and confer with Millstone's IT vendor regarding the production of electronic discovery.  (*See* Text Minute Entry of 06/16/2021.)  On August 17, 2021, the Court granted Millstone's request for 90 days to produce responsive discovery in the form of electronically store information ("ESI"), Ordering Millstone to produce all discovery by October 15, 2021.  (Docket Entry No. 17.)

In a joint letter to the Court, on September 20, 2021, Plaintiffs indicated that on "September 8, 2018 [*sic*]" Defendants submitted 116 pages of documents.  (Docket Entry No. 20.)  In the letter, Millstone advised the Court that Millstone's "IT person" placed "everything" on an external hard drive and Millstone was "going through the hard drive to determine [the] existence of any and all privileged documents and/or information before turning same over to the Plaintiff."  (*Id.*)

On September 23, 2021, Plaintiffs deposed Pamela D'Andrea.  (Docket Entry No. 26.)  Ms. D'Andrea was allegedly the Land Use Administrator during the relevant time period and oversaw the Planning Board and Boards of Adjustment.  (*Id.*)  Ms. D'Andrea's deposition was held remotely via Zoom.  (*Id.*)  Roshan D. Shah and Erin Donegan made their appearances as counsel on behalf of Plaintiffs.  (*Id.*)  Michael B. Shaw made his appearance as counsel on behalf of

Defendant, Mr. Specht. (*Id.*) John T. Bonello made his appearance as counsel on behalf of Defendant, Millstone. (*Id.*) During Ms. D'Andrea's deposition, Exhibit D'Andrea – 20 was introduced by Plaintiffs' counsel. (*Id.*) Exhibit D'Andrea – 20, is an email from October 30, 2019, from Duane O. Davison, Esq., to Mr. Specht and Roger Staib, copying, Robert F. Munoz, Matt Shafai, and "Nick." (*Id.*) Mr. Davison is an attorney at Davison, Eastman, Munoz, Paone, P.A., and serves as Millstone's counsel. The email's subject line is: "RE: On-Site / Dan Murphy – 204 Sweetmans Lane – CONFIDENTIAL – ATTORNEY/CLIENT PRIVILEGE." (*Id.*) Additionally, the email body commences with the following bold statement: "**CONFIDENTIAL – ATTORNEY/CLIENT PRIVILEGE.**" (*Id.*) No objections were raised to Plaintiffs' introduction of Exhibit D'Andrea – 20 during Ms. D'Andrea's deposition. (Docket Entry Nos. 22, 27, and 38.)

On October 26, 2021, Millstone produced ESI in response to Plaintiffs' document requests. (Docket Entry No. 26.) Among the ESI, Plaintiffs received duplicates of documents that were produced by Mr. Specht, including "several e-mails" from Mr. Davison to numerous individuals including Mr. Specht. (Docket Entry Nos. 26 and 27.) On October 12, 2021, the Court held a Telephone Conference with the parties. (*See* Text Minute Entry of 10/12/2021.) The Court instructed the parties that no depositions were to be conducted unless all parties agreed to proceed or by order of the Court. (*Id.*)

On December 16, 2021, the parties submitted a joint status update. (Docket Entry No. 22.) Plaintiffs raised an issue concerning Millstone's privilege log and informed the Court that Millstone and Mr. Specht "produced certain documents that would traditionally fall under the attorney-client privilege/work product doctrine." (*Id.*) Plaintiffs expressed that "[s]ome of [the] documents have been utilized at deposition without objection," and as a result, it was Plaintiffs'

4

position that privilege was waived.  (*Id.*)  Plaintiffs attached Exhibit B to serve as an example of

the aforementioned discovery produced by Defendants.  (*Id.*)  Exhibit B contained a label with the

following: "Exhibit D'Andrea-20," seemingly, from its use in Ms. D'Andrea's deposition.  (*Id.*)

Plaintiffs concluded their portion of the letter with a request for leave to file a motion to amend

the Complaint and to add the following current and former Millstone employees: Kevin Abernethy,

Nancy Grbelja, Pamela D'Andrea, Robin Bucci, Estate of Roger Staib, and Matt Shafai.  (*Id.*)

In the December 16, 2021, joint status update, in response to Plaintiffs' concerns regarding

the privilege log, Defendants indicated that it took "an exorbitant amount of time to go through

28,000 plus pages of documents and emails that the IT server provided on an external hard drive.

Of those 28,000 plus pages, [Defendants] withheld only those items as set forth" in the privilege

log attached as Exhibit A.  (*Id.*)  Defendants explained to the Court that between the over 3,000

documents provided by Mr. Specht and the thousands of documents provided by the ESI produced

by Millstone, Plaintiffs' counsel was in possession of "anything and everything available."  (*Id.*)

Lastly, Defendants did not consent to Plaintiff's request to amend the Complaint.  (*Id.*)  Defendants

did not respond to Plaintiffs' position regarding Exhibit B.  (*Id.*)  On January 11, 2022, the Court

granted Plaintiffs' request for Leave to File a Motion to Amend.  (Docket Entry No. 23.)

Plaintiffs filed the Motion for Leave to File the First Amended Complaint on February 2,

2022 ("Motion to Amend").  (Docket Entry No. 26.)  Mr. Shah attached Exhibits D and E to his

Certification for the Motion to Amend.  (*Id.*)  Exhibit D is a copy of the email previously marked

as D'Andrea – 20.  (*Id.*)  Exhibit E is another email from Mr. Davison to Mr. Specht, copying Mr.

Abernethy, Mr. Shafai, and Mr. Munoz, which contains the following subject line: "RE: Onsite

Landscape Management CONFIDENTIAL – ATTORNEY/CLIENT PRIVILEGE" and the body

of the email begins with the following bolded note: "**CONFIDENTIAL –**
**ATTORNEY/CLIENT PRIVILEGE**." (*Id.*)

## II.    Analysis

### A. Plaintiffs' Motion for Leave to File the First Amended Complaint Pursuant to Federal Rule of Civil Procedure 15.

Through Plaintiffs' Motion to Amend, Plaintiffs intend to amend their Complaint to add seven current and former Millstone employees to the matter: Kevin Abernethy, who was allegedly the Business Administrator during the relevant time period; Nancy Grbelja, who was allegedly a member of the Township Committee and Mayor and/or Deputy Mayor during the relevant time period; Pamela D'Andrea, who was allegedly the Land Use Administrator during the relevant time period and oversaw the Planning Board and Boards of Adjustment; Robin Bucchi, who was allegedly the Tax Assessor during the relevant time period; Estate of Roger Staib, Mr. Staib was allegedly the Business Administrator during the relevant time period; Nicholas Procaccini, who was allegedly the Assistant Code Enforcement Officer during the relevant time period, and now holds the title of Code Enforcement Officer; and Matt Shafai, who was allegedly the Zoning Officer during the relevant time period; in their individual and official capacities ("Proposed Defendants"). (Docket Entry No. 26.)

With respect to Mr. Abernethy and the Estate of Roger Staib, Plaintiffs seek to assert a substantive and procedural violation of the Fourteenth Amendment's Due Process Clause under 42 U.S.C. § 1983, First Amendment retaliation under 42 U.S.C. § 1983, and Tortious Interference with an economic advantage. (*Id.*) With respect to Ms. Grbelja, Ms. D'Andrea, Mr. Bucchi, Mr. Procaccini, and Mr. Shafai, Plaintiffs seek to assert a substantive and procedural violation of the Fourteenth Amendment's Due Process Clause under 42 U.S.C. § 1983 and Tortious Interference with an economic advantage. (*Id.*)

6

Additionally, Plaintiffs also seek to add claims for Violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, et seq.--Aiding and Abetting Liability, against all Proposed Defendants; Fifth Amendment Unlawful Taking under 42 U.S.C. § 1983, against all Defendants; Violation of 42 U.S.C. §1981 against Mr. Specht in his individual capacity; Civil Conspiracy under 42 U.S.C. § 1983, against Mr. Specht and all Proposed Defendants, in their individual capacities; Parallel Violation of the New Jersey State Constitution under N.J.S.A. §§ 10:6-2, against all Defendants; and Declaratory Relief Under 28 U.S.C. §§ 2201, et seq., and Injunctive Relief, against all Defendants.  (Docket Entry No. 26.)  Millstone generally opposes Plaintiffs' proposed amendments alleging the allegations do not state actionable claims.  (Docket Entry No. 30.)  Thus, Millstone's opposition of Plaintiffs' proposed amendments are solely on futility grounds.  As a result, the Court's analysis centers on same.

Pursuant to Rule 15(a)(2), leave to amend pleadings is generally granted freely.  *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182; *see Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2002).  However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (citation omitted).  To determine if an amendment is "insufficient on its face," the Court

utilizes the motion to dismiss standard under Rule 12(b)(6), *see Alvin*, 227 F.3d at 121, and considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Additionally, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

When assessing the following Counts and the inclusion of the Proposed Defendants, the Court notes that each Proposed Defendant holds an official government position in Millstone. (*Id.*) Additionally, the Court also notes that each of the Proposed Defendants were copied in relevant emails from Millstone's counsel advising against their erroneous conduct directed at Plaintiffs. (*Id.*) Therefore, the Proposed Defendants failed to prevent or deter any improper conduct or that

of Mr. Specht, Millstone's Code Enforcement Official, against Plaintiffs.  (*Id.*)

> **1.  Count II and III: Violation of the Fourteenth Amendment's Due Process Clause (Substantive and Procedural Due Process) Under 42 U.S.C. §1983 against Specht, Shafai, Estate of Staib, Abernathy, Grbelja, D'Andrea, Procaccini, and Bucchi, in their Individual Capacities.**

The Court first examines Plaintiffs' claim that the Proposed Defendants committed substantive and procedural violations of the Fourteenth Amendment's Due Process Clause under 42 U.S.C. §1983.

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

To assert a substantive due process claim, a plaintiff must allege the following elements: "(i) defendants acted under color of law; (ii) a protected property or liberty interest was at stake; (iii) the defendants had a duty of care toward the plaintiff; and (iv) a deprivation within the meaning of the due process clause occurred."  *Roberts v. Mentzer*, 382 F. App'x 158, 166 (3d Cir. 2010) (citing *Fagan v. City of Vineland,* 22 F.3d 1296, 1310 (3d Cir.1994).

Here, in Count II of the proposed Amended Complaint, Plaintiffs allege, among other things, as follows:

> 205. Specht targeted plaintiffs for enforcement and issued violation notices and criminal complaints on the false premise that plaintiffs needed to obtain farmland tax assessment status before they could engage in farming/landscaping/recycling activities.

> 206. Specht was assisted in this endeavor by Staib, Shafai, Abernathy, Grbelja, D'Andrea, Procaccine, and Bucchi, all of whom knew that the Farmland Assessment has nothing to do with whether a property owner can conduct farming activities on their land.
> . . . .

9

212. Such arbitrary governmental action shocks the conscience and deprived plaintiffs of their property and liberty interests, including those secured to them under the Township Code and the zoning permits.

213. As a result, plaintiffs suffered economic harm.

214. In addition, Murphy suffered emotional distress.

(Proposed Am. Compl. ¶¶ 205-14.)

In its opposition to the Motion to Amend, Millstone claims that "[a]s the code enforcement official, Specht alone issued the notice of violation." (Docket Entry No. 30.) Therefore, according to Millstone, Plaintiffs failed to plead that each Proposed Defendant, through their own individual actions, violated the Constitution. (*Id.*)

Despite Millstone's opposition, the Court finds that Plaintiffs sufficiently pled all elements of a substantive due process claim under 42 U.S.C. §1983. In this regard, Plaintiffs set forth numerous facts to support their allegations that the Proposed Defendants violated Plaintiffs' substantive liberty and property rights under the Fourteenth Amendment's Due Process Clause.

For example, among other allegations, Plaintiffs state:

- Mr. Specht issued violation notices and criminal complaints on false pretenses;

- Mr. Specht was assisted in this endeavor by the Proposed Defendants acting in their official capacities;

- The violation notices and criminal complaints are contrary to Millstone's ordinances;

- Mr. Spect with the assistance of the Proposed Defendants engaged in arbitrary governmental action that deprived Plaintiffs of their property and liberty interests, including those secured to them under the Township Code and the zoning permits.

(Proposed Am. Compl. ¶¶ 205-12.)

Therefore, the Court finds that sufficient facts have been stated to render Plaintiffs' substantive due process claim under 42 U.S.C. §1983 non-futile.  Plaintiffs shall be permitted to amend their Complaint to assert same.

A procedural due process claim "requires a familiar two-stage analysis: we first must ask whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'; if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984) (citations omitted).

> [T]o have a property interest in a benefit that is protected by procedural due process, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Property interests are not generally created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984) (citations omitted).

Here, in Count III of the proposed Amended Complaint, Plaintiffs allege, among other things, as follows:

> 222. Millstone effectively changed Sweetmans Farm's zoning designation on their own by declaring that plaintiffs could not operate a farm, or conduct any accessory activities (such as landscaping or Class B recycling) without first obtaining a farmland assessment.

> 223. Specht, with the knowledge and participation of the other Millstone Officials, then began issuing violation notices and criminal complaints against Sweetmans Farm based on the "new" zoning designation that the other Millstone Officials made up just for plaintiffs' property.

> 224. The Millstone Officials' actions deprived plaintiffs of their protected property and liberty rights without affording them any due process.

> 225. As a result, plaintiffs have suffered economic injuries.

226. In addition, Murphy has suffered emotional distress.

(Proposed Am. Compl. ¶¶ 222-26.)

In its opposition to Count III of the proposed Amended Complaint, Millstone claims that "N.J. Court Rule 4:69 provides plaintiffs with remedies if they disagreed with Specht's action." (Docket Entry No. 30.)  Millstone also argues that the proposed Amended Complaint does not allege the absence or presence of an applicable procedure and fails to identify any claim Plaintiffs may have been deprived of.  (*Id.*)

After reviewing Count III, the Court finds that Plaintiffs plead sufficient facts to assess a violation of a procedural due process claim under 42 U.S.C. §1983.  In this regard, Plaintiffs set forth numerous facts to support their allegations that the Proposed Defendants violated Plaintiffs' procedural due process rights under the Fourteenth Amendment's Due Process Clause.

For example, pertinent allegations made by Plaintiffs include:

- Mr. Specht, without any authority, nullified Plaintiffs' zoning permits and commercial farm certificate, and their "natural right" to conduct farming operations in Millstone;

- Mr. Specht was assisted in this endeavor by the proposed Defendants acting in their official capacities;

- Ms. Grbelja declared the Commercial Farm Certificate nullity;

- Mr. Specht with the assistance of the Proposed Defendants deprived Plaintiffs of their protected property and liberty rights without affording them any due process.

(Proposed Am. Compl. ¶¶ 217-24.)

Therefore, the Court finds that sufficient facts have been stated to render Plaintiffs' procedural due process claim under 42 U.S.C. §1983 non-futile.  Plaintiffs shall be permitted to amend their Complaint to assert same.

### 2.  Count IV: First Amendment Retaliation Under 42 U.S.C. §1983 against Specht, Abernethy, and Estate of Staib, in their Individual Capacities.

The Court next examines Plaintiffs' claim against Mr. Abernethy and Mr. Staib, regarding Count IV.  (Docket Entry No. 26.)  "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citations omitted).  "The key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'"  *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citations omitted).

Here, the proposed Amended Complaint alleges that after Plaintiffs filed a notice of tort claim again Millstone on September 30, 2019, Mr. Staib "specifically instructed Specht – and Specht agreed – that plaintiff should be excluded from even bidding on Millstone brush grinding program in 2019, because plaintiffs had dared exercise their First Amendment rights and seek legal redress for the Millstone Officials' ongoing violations of their rights."  (Docket Entry No. 26.)  Again, "[i]n 2020 and continuing through the present date, Specht and Abernathy continued to exclude plaintiffs from even bidding on the brush grinding program because plaintiffs had dared exercise their First Amendment rights." (Docket Entry No. 26.)  In its opposition, Millstone argues that Plaintiffs fail to explain the alleged constitutionally protected conduct or the alleged causal link between the constitutionally protected conduct and the retaliatory action.  (Docket Entry No. 30.)

Considering the allegations in Plaintiffs' favor, the Court concludes that Plaintiffs have adequately pled First Amendment retaliation claims.  Plaintiffs identified their attempt to exercise

their First Amendment rights by filing a notice of tort claims against Millstone and in response, Mr. Specht, Mr. Staib, and Mr. Abernathy, all at some point between 2019 and 2020, agreed to exclude Plaintiffs from bidding on the Millstone brush grinding program, a conduct that may be sufficient to deter a person of ordinary firmness from exercising their First Amendment rights.

Therefore, the Court finds that sufficient facts have been stated to render Plaintiffs' First Amendment retaliation claims under 42 U.S.C. §1983 non-futile. Plaintiffs shall be permitted to amend their Complaint to assert same.

### 3. Count VII: Tortious Interference with an economic advantage against Specht, Grbelja, Shafai, Estate of Staib, Abernethy, D'Andrea, Procaccini, and Bucchi.

The Court next examines Plaintiffs' claim against the Proposed Defendants under Tortious Interference with an economic advantage. To prevail on a claim of Tortious Interference with an economic advantage under New Jersey law, "[a] plaintiff must demonstrate: (1) 'reasonable expectation of economic advantage' from a business relationship; (2) interference 'done intentionally and with malice,' which means 'the harm was inflicted intentionally and without justification or excuse'; (3) 'the interference caused the loss of the prospective gain'; and (4) damages as a result of the loss. *OWAL, Inc. v. Caregility Corp.*, No. 3:21-CV-13407, 2022 WL 890182, at *12 (D.N.J. Mar. 25, 2022) (citations omitted). Moreover, "[i]nterference is actionable 'even where there is no enforceable contract.' However, 'the right protected is plaintiff's right to pursue business.'" *OWAL, Inc.*, No. 3:21-CV-13407, 2022 WL 890182, at *12 (citations omitted).

Plaintiffs present the following information in support of Count VII:

- Plaintiffs invested over $2 million in their farming business with the expectation that they would continue selling their products to their customers and accruing the benefits and advantages of operating a business.

- Mr. Specht interfered with Plaintiffs' rights by declaring the property at issue was

14

not entitled to certain benefits and zoning permits.

- Mr. Specht had no basis to deprive Plaintiffs of the benefits of the Township Code.

- The Proposed Defendants were aware of and acquiesced to Mr. Specht's unlawful conduct, furthering his schemes and in some cases crafting elaborate narratives around the Farmland Assessment.

- As a result of the aforementioned actions, Plaintiffs suffered economic damages.

Millstone opposes this amendment arguing that the Proposed Defendants have no duty to supervise or overrule Mr. Specht's alleged actions, therefore, their inaction is not "tortious" as a matter of law.  Millstone, however, ignores Plaintiffs' allegation that the Proposed Defendants participated in tortious conduct "by crafting elaborate narratives" that enabled Mr. Specht's behavior.

Therefore, the Court finds that sufficient facts have been alleged to render Plaintiffs' Tortious Interference with an economic advantage claim non-futile.  Plaintiffs shall be permitted to amend their Complaint to assert same.

### 4.  Count VI: Violation of the New Jersey Law Against Discrimination N.J.S.A. §§ 10:5-1, et seq.--Aiding and Abetting Liability, against Grbelja, Shafai, Estate of Staib, Abernethy, D'Andrea, Procaccini, and Bucchi.

The Court next turns to Plaintiffs' request to add a claim for Violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, et seq.--Aiding and Abetting Liability, against all Proposed Defendants.

N.J. Stat. Ann. § 10:5-12.5(a) provides the following:

a. It shall be an unlawful discrimination for a municipality, county, or other local civil or political subdivision of the State of New Jersey, or an officer, employee, or agent thereof, to exercise the power to regulate land use or housing in a manner that discriminates on the basis of race, creed, color, national origin, ancestry, marital status, familial status, sex, gender identity or expression, liability for service in the Armed Forces of the United States, nationality, or disability.

15

Here, Plaintiffs allege that the Proposed Defendants were aware of Mr. Specht's supposedly unlawful conduct, and nonetheless, assisted Mr. Specht "by helping him craft a narrative around the idea that a farmland assessment was required to conduct farming; by falsely declaring that plaintiffs did not qualify for a farmland assessment; by declaring that the Commercial Farm Certificate was a nullity; by disregarding his permits after issuing them; and helping Specht convince Monmouth County officials to issue cease and desist letters to stop plaintiffs' perfectly legal Class B exempt recycling activities."  (Docket Entry No. 26.)

N.J. Stat. Ann. § 10:5-12.5(b) provides the following:

b. The provisions of subsection a. of this section may only be enforced by initiating an action in Superior Court pursuant to paragraph (2) of subsection a. of section 12 of P.L.1945, c. 169 (C.10:5-13). The restrictions of this subsection shall not apply to claims alleging discrimination in housing owned or managed by a municipality, county or other local civil or political subdivision of the State of New Jersey where such discrimination is otherwise prohibited by section 11 of P.L.1945, c. 169 (C.10:5-12).

Therefore, this Court lacks jurisdiction over claims of discrimination in land use.  *See Kessler Inst. for Rehab., Inc. v. Mayor & Council of Borough of Essex Fells*, 876 F. Supp. 641, 665 (D.N.J. 1995) ("This federal district Court lacks jurisdiction over claims of discrimination in land use policy by a municipality arising under N.J.S.A. 10:5–12.5."); *Lapid Ventures, LLC v. Twp. of Piscataway*, No. CIV. 10-6219 WJM, 2011 WL 2429314, at *6 (D.N.J. June 13, 2011) ("New Jersey Statute § 10:5–12 .5 explicitly states that, 'any person claiming to be aggrieved by an unlawful discrimination under this section shall enforce this section by private right of action in Superior Court.'  Courts in this District have interpreted this provision to mean that federal district courts lack jurisdiction over claims of discrimination in land use policy by a municipality that arise under N.J. Stat. Ann. § 10:5–12.5." (citations omitted)); *Hansen Found., Inc. v. City of Atl. City*, 504 F. Supp. 3d 327, 342 (D.N.J. 2020) ("However, the provision also provides that 'any

person claiming to be aggrieved by an unlawful discrimination under this section shall enforce this section by private right of action in Superior Court.' This Court has previously interpreted this provision to mean that New Jersey Superior Court has exclusive jurisdiction over claims of discrimination in land use policy by a municipality that arise under N.J.S.A. § 10:5–12.5, and therefore federal district courts lack subject matter jurisdiction." (citations omitted)).

As a result, Plaintiffs' request to amend their Complaint to add a claim for Violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, et seq.--Aiding and Abetting Liability, against all Proposed Defendants, is denied.

### 5.  Count IX: Fifth Amendment Unlawful Taking under 42 U.S.C. § 1983, against all Defendants.

The Court next turns to Plaintiffs' request to add a claim for Fifth Amendment Unlawful Taking under 42 U.S.C. § 1983, against all Defendants.  Plaintiffs' claim that Defendants committed an unlawful taking of Plaintiffs' property when Defendants deprived Plaintiffs of their permits, Commercial Farm Certificate, and Class B recycling activity permit, "which would have allowed plaintiffs to use the property consistent with their investment backed expectations." (Docket Entry No. 26.)   Moreover, Defendants failed to provide Plaintiffs with any just compensation under the law.  (*Id.*)

Millstone opposes the addition of this claim and argues that "[u]nder the Fifth Amendment, an owner's claim that his/her property has been 'taken' is not ripe if the right to local relief (such as variance relief) has not been exhausted."  (Docket Entry No. 30.)  Millstone cites *Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162 (2019), to support its position.  They go on to assert that "[u]nder *Knick* and [*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)], [Plaintiffs] Fifth Amendment right does not accrue until they have exhausted remedies at the municipal and State levels."  (Docket Entry No. 30.)  Thus, Millstone claims that the proposed

17

pleading fails to state a Fifth Amendment violation because neither Plaintiffs' original Complaint nor the proposed Amended Complaint mentions Plaintiffs' attempts to exhaust administrative remedies. (*Id.*)

Millstone's reliance on *Knick*, however, is improper. The Court in *Knick* overruled W*illiamson*, writing:

> Contrary to *Williamson County*, a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it. The Clause provides: "[N]or shall private property be taken for public use, without just compensation." It does not say: "Nor shall private property be taken for public use, without an available procedure that will result in compensation." If a local government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings Clause says—without regard to subsequent state court proceedings. And the property owner may sue the government at that time in federal court for the "deprivation" of a right "secured by the Constitution." 42 U.S.C. § 1983.

*Knick*, 139 S. Ct. at 2170. Therefore, Millstone's opposition is erroneous. Moreover:

> Supreme Court precedent identifies two categories of regulatory action that are generally deemed *per se* takings under the Fifth Amendment:

> First, where government requires an owner to suffer a permanent physical invasion of her property – however minor – it must provide just compensation. A second categorical rule applies to regulations that completely deprive an owner of "*all* economically beneficial us[e] of her property.

*Helen v. Turner*, No. CV 13-7269, 2020 WL 4582018, at *22 (D.N.J. Aug. 10, 2020) (citations omitted) ("Government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster . . . such 'regulatory takings' may be compensable under the Fifth Amendment." (citing *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005)).

Therefore, the Court finds that sufficient facts have been stated to render Plaintiffs' Fifth Amendment Unlawful Taking under 42 U.S.C. § 1983 claim against all Defendants non-futile. Plaintiffs shall be permitted to amend their Complaint to assert same.

### 6.  Count X: Violation of 42 U.S.C. §1981 Against Mr. Specht in his individual capacity.

The Court next turns to Plaintiffs' request to add a claim for Violation of 42 U.S.C. §1981, against Mr. Specht in his individual capacities.

42 U.S.C. §1981 states:

**(a) Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Here, Plaintiffs claim that Mr. Specht "targeted plaintiffs--by, among other things, unlawfully issuing violation notices and criminal complaints--based on the Hispanic race of their employees, and the ethnicity and national origin of Murphy's family." (Docket Entry No. 26.) Further, Mr. Specht's "conduct deprived plaintiffs of the full and equal benefit of all laws and proceedings that provide for the security of persons and property, which is enjoyed by others." (*Id.*)

The Court finds that sufficient facts have been stated to render Plaintiffs' Violation of 42 U.S.C. §1981 claim against Mr. Specht non-futile.  Plaintiffs shall be permitted to amend their Complaint to assert same.

**7.  Count XI: Civil Conspiracy under 42 U.S.C. § 1983, Against Mr. Specht, Shafai, Estate of Staib, Abernethy, Grbelja, D'Andrea, Procaccini, and Bucchi, in their individual capacities.**

The Court next turns to Plaintiffs' request to add a claim for Civil Conspiracy under 42

U.S.C. § 1983, against Mr. Specht and all Proposed Defendants, in their individual capacities.

> The elements of a conspiracy are that two or more persons conspire to deprive a person of constitutional rights, one or more of the conspirators performs any overt act in furtherance of the conspiracy, and the overt act injures the plaintiff or deprives him of any rights or privileges of a citizen of the United States while the conspirators acted under color of state law.  To prove such a claim, a plaintiff must show the existence of a conspiracy and a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  The plaintiff must establish the period of the conspiracy, the object of the conspiracy, and certain overt acts of the alleged conspirators taken to achieve that purpose.

*Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 317 (D.N.J. 2021).

Here, Plaintiffs allege that Mr. Specht and the Proposed Defendants conspired to violate

Plaintiffs' civil rights in a myriad of ways, including the following:

> a) issue notice violations and criminal summons to plaintiffs, though they lacked any basis;

> b) deprive plaintiffs of their opportunity to bid on the brush grinding program;

> c) deprive plaintiffs of their right to conduct Class B recycling activities on Sweetmans Farm;

> d) deprive plaintiffs the right to equal protection of the laws;

> e) deprive plaintiffs of their property interests in the permits;

> f) deprive plaintiffs of their rights to utilize their property for farming;

> g) deprive plaintiffs of their Farmland Assessment;

> h) take plaintiffs' property without paying just compensation.

(Proposed Am. Compl. ¶ 276.)

Plaintiffs allege that the aforementioned conduct resulted in the deprivation of Plaintiffs' civil rights under the First Amendment, Fifth Amendment, and Fourteenth Amendment. (Docket Entry No. 26.) In response, Millstone argues that Plaintiffs fail to "accuse any of the [Proposed Defendants] of 'reaching an understanding' with Specht," as "the only actionable claim alleged in the complaint, is that against Specht for supposedly acting with racial animus." (Docket Entry No. 30.) Despite Millstone's position, Plaintiffs' allegations throughout the proposed Amended Complaint assert sufficient facts to render Plaintiffs' Civil Conspiracy under 42 U.S.C. § 1983 non-futile. Plaintiffs shall be permitted to amend their Complaint to assert same.

### 8.  Count XII: Parallel Violation of the New Jersey State Constitution under N.J.S.A. §§ 10:6-2, against all Defendants.

The Court next turns to Plaintiffs' request to add a claim for Parallel Violation of the New Jersey State Constitution under N.J.S.A. § 10:6-2, against all Defendants. Plaintiffs allege that Defendants' conduct violated not only the United States Constitution, but also parallel provisions of the New Jersey State Constitution. "The '[N.J.S.A. § 10:6-2, New Jersey Civil Rights Act ("NJCRA")] was modeled after § 1983, [so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart.'" *Morrieson v. City of Jersey City*, No. CV 18-12974, 2022 WL 819634, at *3 (D.N.J. Mar. 18, 2022). "Accordingly, Plaintiffs' New Jersey State Constitution claims will be interpreted analogously to their § 1983 claims." *Samoles v. Lacey Twp.*, No. CIV.A. 12-3066 FLW, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (citations omitted).

Therefore, it is likely the Court will consider Plaintiff's § 1983 and NJCRA claims together. Consequently, in so far as Plaintiffs' parallel claims have been identified as non-futile, so too shall Plaintiffs' claim for Parallel Violation of the New Jersey State Constitution under

N.J.S.A. § 10:6-2 be considered non-futile.  Plaintiffs shall be permitted to amend their Complaint

to assert same.

### 9.  Count XIII: Declaratory Relief Under 28 U.S.C. §§ 2201, et seq., and Injunctive Relief, Against all Defendants.

Lastly, the Court turns to Plaintiffs' request to add a claim for Declaratory Relief Under 28

U.S.C. §§ 2201, et seq., and Injunctive Relief against all Defendants.

> The Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  The express language of the declaratory judgment statute and fundamental principles of standing under Article III of the Constitution limit this power to actions which present a case or controversy.  "The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions."  For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite.  The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree and the question in each case is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment."  Therefore, deciding whether [plaintiff's] claim for a declaratory judgment can survive this motion to dismiss requires an evaluation of whether the Amended Complaint states a justiciable controversy.

*JPMorgan Chase Bank, N.A. v. Republic Mortg. Ins. Co.*, No. CIV.A. 10-06141 SRC, 2011 WL

1750439, at *2 (D.N.J. May 4, 2011) (citations omitted).

Here, Plaintiffs seek the following declaratory and injunctive relief:

a) A declaratory judgment declaring that Section 27-1.1 and Section 5- 7.2 of the Township Code apply to Sweetmans Farm;

b) A declaratory judgment declaring that the permitted uses in the November 2017 Permit, and the 2013 Commercial Farming Certificate, continue in effect until Millstone adopts a lawful resolution or ordinance modifying the zoning;

c) An injunction prohibiting Millstone or its agents, including Specht, from issuing summonses or criminal complaints to plaintiffs for engaging in farming activity consistent with Section 27-1.1 and Section 5-7.2 of the Township Code;

d) An injunction prohibiting Millstone or its agents, including Specht, from stating that Sweetmans Farm needs to qualify for differential tax treatment before it can operate as a farm;

e) all other relief the Court deems just and equitable.

(Proposed Am. Compl. ¶ 288.)  Having already determined that a number of Plaintiffs' claims are not futile, the Court shall also permit Plaintiffs declaratory judgment claim.

For the reasons stated above, Plaintiffs' motion to amend is **GRANTED** in part and **DENIED** in part.

### B. Millstone's Cross Motion to Strike and For Disqualification of Plaintiff's Counsel.

On March 7, 2022, Millstone filed a Cross-Motion to Strike and for Related Relief, including Disqualification of Plaintiffs' Counsel ("Cross Motion").  (Docket Entry No. 32.) Plaintiffs filed their opposition on March 24, 2022.  (Docket Entry No. 38.)  Millstone's Cross Motion argues that Mr. Shah violated, and continues to violate, Rule of Professional Conduct ("RPC") 4.4.  (Docket Entry No. 32.)  Specifically, Millstone claims that Mr. Shah violated RPC 4.4 after Mr. Shah reviewed at least two confidential emails from Millstone's counsel to Millstone's employees containing legal advice unintentionally and inadvertently produced to Mr. Shah through Millstone and/or Mr. Specht's document production.  (*Id.*)  As such, Millstone argues that Mr. Shah was obligated to "immediately 'stop reading' the documents," "notify Mr. Bonello," "return the documents to Mr. Bonello and to take measure to assure that the documents were inaccessible." (*Id.*)  Instead, Millstone contends that Mr. Shah "utterly disregarded his professional obligations and instead affirmatively used the privileged communications to advance this case." (*Id.*)

Plaintiffs oppose the Cross Motion first noting that Millstone was advised nine months before the filing of Plaintiffs' opposition, that Plaintiffs were in possession of privileged documents.  (Docket Entry No. 38.)  Plaintiffs' write "[w]e have been vocal about our possession in both writing and orally.  Millstone's response throughout has been radio silence, including during a deposition where we walked a witness through these documents and placed them on the screen."  (*Id.*)  Therefore, Plaintiffs contend that Millstone's claim of inadvertent disclosure is "feigned."  (*Id.*)

> In this District, questions of professional ethics are governed by L.Civ. R. 103.1(a), which provides that the Rules of Professional Conduct ("RPC") are to be used to resolve same.  In interpreting the RPCs, the Court looks to New Jersey's state courts' interpretations as primary authority and modifies that interpretation when required or permitted by federal law.
>
> When considering a motion to disqualify counsel, the movant bears the burden of proving that disqualification is appropriate because the RPCs were violated.

*Strategic Env't Partners, LLC v. Bucco*, No. CIV.A. 13-5032 CCC, 2014 WL 6065816, at *2 (D.N.J. Nov. 12, 2014) (citations omitted).

RPC 4.4 states as follows:

> (b) A lawyer who receives a document or electronic information and has reasonable cause to believe that the document or information was inadvertently sent shall not read the document or information or, if he or she has begun to do so, shall stop reading it. The lawyer shall (1) promptly notify the sender (2) return the document to the sender and, if in electronic form, delete it and take reasonable measures to assure that the information is inaccessible.

Here, Plaintiffs claim that upon reading the alleged privileged documents, they believed they were produced as part of a potential "reliance upon counsel" defense.  (Docket Entry No. 38.) The Court notes that both Exhibits D and E contain at least two separate statements prior to the body of the email that read: "CONFIDENTIAL – ATTORNEY/CLIENT PRIVILEGE."  In light of these explicit designations, the Court finds that, even if the documents were not privileged,

Plaintiffs had reasonable cause to believe the documents were inadvertently sent.  Plaintiffs should have, at a minimum, promptly notified the Defendants of their possession of these documents and returned them to the Defendants.  Plaintiffs' counsel did not do so.  Plaintiffs' counsel therefore, did act in violation of RPC 4.4(b).

As a result of Plaintiffs' violation of RPC 4.4, Millstone argues that this Court should enforce the following sanctions: first, the Court should order Plaintiffs' counsel to immediately comply with RPC 4.4 by notifying Millstone's counsel of which documents Plaintiffs have obtained that "reasonably appear" to be privileged communication between Millstone and its attorney and order that Plaintiffs' counsel immediately return all such documents to Millstone's counsel; second, the Court should strike those submissions containing reference to the allegedly unintentionally and inadvertently produced documents; and lastly, Millstone argues that the Court should disqualify Plaintiffs' counsel.  (Docket Entry No. 32.)  For the following reasons, the Court declines to impose Millstone's requested sanctions.  Millstone's Cross Motion is **DENIED** in its entirety.

Millstone is not entitled to the return of any documents inadvertently disclosed to Plaintiffs. "Motions to reclaim documents that have allegedly been inadvertently produced are governed by [Federal Rule of Evidence] ("FRE") 502."  *D'Onofrio v. Borough of Seaside Park*, No. CIV.A. 09-6220 AET, 2012 WL 1949854, at *6 (D.N.J. May 30, 2012).  FRE 502 provides as follows:

Rule 502. Attorney–Client Privilege and Work Product; Limitations on Waiver

(b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
(1) the disclosure is inadvertent;
(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Therefore,

> In determining whether inadvertently produced documents should be returned, the Court engages in a two-step analysis.  First, the Court must determine whether the documents at issue are, in fact, privileged.  Second, if privileged, then the Court must determine whether the aforementioned three prongs of FRE 502(b) have been met.  The disclosing party has the burden of proving that the elements of FRE 502(b) have been satisfied.  Similarly, the burden of proving that a privilege exists rests with the party asserting the privilege.

> The approach set forth in FRE 502(b) is essentially the same as that used in *Ciba–Geigy Corp. v. Sandoz Ltd.*, 916 F.Supp. 404, 411 (D.N.J.1995).  Under the approach outlined in *Ciba–Geigy*, the Court engages in a multi-factor analysis to determine whether a waiver occurred.  Factors considered are "'(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its error.'"

*D'Onofrio*, No. CIV.A. 09-6220 AET, 2012 WL 1949854 at *7 (citations omitted).

As noted above, the Court begins its analysis by determining whether the inadvertently produced documents are privileged.  In this regard, Millstone argues that at least two emails produced to Plaintiffs, Exhibits D and E, are privileged under the attorney-client privilege.  (Docket Entry No. 32.)  "There is no doubt that documents, from Millstone's attorney to Millstone's municipal employees, about legal issues involving Millstone, are shielded by the attorney-client privilege."  (*Id.*)  Further, on February 3, 2022, in a letter from Millstone's counsel to Mr. Shah, Millstone's counsel wrote: "this correspondence shall serve as notice that all such correspondence produced in discovery that you refer to in the December 16, 2021 correspondence is indeed subject to the attorney-client privilege and/or work produce doctrine."  Therefore, the Court finds that the documents at issue are privileged.

Having determined that Exhibits D and E are privileged, the Court next addresses whether these categories of documents were inadvertently produced under Rule 502(b) and the multi-factor test outlined in *Ciba–Geigy*. Millstone argues that the production of privileged information was inadvertent because "[t]he documents were contained in a 28,000 – page document production." (Docket Entry No. 32.) In response, Plaintiffs argue that the production of Exhibits D and E were intentional. First, Plaintiffs contend that Millstone was advised of Plaintiffs' possession of potentially privileged documents almost nine months before the filing of Plaintiffs' opposition. (Docket Entry No. 38.) Second, Plaintiffs relied on the documents during the deposition of Ms. D'Andrea with no objection from Millstone's counsel. (Id.) Third, Plaintiffs identified the potential privileged documents in a joint letter to the Court submitted December 16, 2021. (Id.) Millstone had numerous opportunities to assert their privilege in the event that the production of Exhibits D and E were inadvertently disclosed, however, Millstone failed to do so. Therefore, the Court finds that Millstone's disclosure was not inadvertent.

As to the next factor, the Court finds that Millstone failed to offer any facts to establish that reasonable precautions were taken to prevent a disclosure. First, in describing its review of the "sizeable" document production produced to Mr. Shah, Millstone briefly mentions the creation of a privilege log identifying "that various correspondence, e-mails and other documents were not being produced as they were subject to the attorney-client privilege and/or work product doctrine." (Docket Entry No. 32.)

> A proper privilege log must include, for each withheld document, the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document, and the privilege or privileges asserted. The Third Circuit has rejected "broadside invocation[s] of privilege" which fail to "designate with particularity the specific documents or file to which the claim of privilege applie[s]."

*Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208–09 (D.N.J. 1996) (citations omitted).

Here, Millstone's privilege log has been the center of dispute for several months.  Plaintiffs first raised an issue concerning Millstone's privilege log on December 16, 2021, in the parties' joint status update.  (Docket Entry No. 22.)  Plaintiffs argued that the log was "merely a category of items withheld, not a log of actual documents."  (*Id.*)  Before bringing the issue to the Court's attention, Plaintiffs' counsel sent a letter to Mr. Bonnello, notifying him the privilege log was deficient.  (*Id.*)  Millstone allegedly responded with a revised privilege log that maintained the same deficiencies.  (*Id.*)  Plaintiffs attached the revised privilege log to the parties' letter.  (*Id.*)  In response, Defendants argued that Millstone spent an "exorbitant amount of time" going through its production of 28,000 documents.  (*Id.*)  Additionally, Defendants reiterated that of the 28,000 documents produced, only the items in the privilege log were withheld.  (*Id.*)  Defendants further clarified that Plaintiffs were in possession of "anything and everything available."  (*Id.*)

Upon review of Millstone's revised privilege log, the Court finds that it fails to meet the standard of a proper privilege log.  Millstone's privilege log is simply a list of unknown documents. Millstone is Ordered to create a privilege log that complies with Fed. R. Civ. P 26(b)(5). Millstone's admission that it reviewed 28,000 documents and relied on its inadequate privilege log as a precaution, is indicative of Millstone's efforts to prevent a disclosure.  Millstone's privilege log as is weighs in favor of a waiver.

Second, Millstone's admission that it spent an "exorbitant amount of time" reviewing its production is not telling of Millstone's effort to prevent a disclosure.

Third, the Court notes that Plaintiffs served Defendants with Plaintiffs' discovery requests on either October 26, 2020 (Docket Entry No. 26), or October 29, 2020 (Docket Entry No. 10), the Court then met with the parties on June 16, 2021, and directed Plaintiffs and Millstone to meet and confer with Millstone's IT vendor regarding the production of electronic discovery.  (*See* Text

Minute Entry of 06/16/2021.)   Approximately a year after being served with the discovery requests, on October 26, 2021, Millstone produced ESI.  (Docket Entry No. 26.)

Lastly, in reliance of Millstone's assertion that Exhibits D and E "are, obviously and on their face" privileged communication, the Court finds that Millstone's counsel has failed to establish that it undertook reasonable precautions to prevent the inadvertent disclosures of the documents at issue.

The next factor, the number of inadvertent disclosures, weighs in favor of a waiver. Millstone is unable to identify whether Plaintiffs are in possession of other privileged communications besides Exhibits D and E.  (Docket Entry No. 32.)  Plaintiffs have indicated that they may be in possession of "several" other documents like Exhibits D and E.  (Docket Entry No. 22.)  Millstone's inability to identify the number of inadvertent disclosures provides further evidence that Millstone's precautions, with respect to the protection of privileged documents, were inadequate.

Additionally, "as in *Peterson*, the Court [is] also . . . mindful of 'the nature of the disclosures' at issue."  *D'Onofrio v. Borough of Seaside Park*, No. CIV.A. 09-6220 AET, 2012 WL 1949854, at *12 (D.N.J. May 30, 2012) (citing *Peterson v. Bernardi*, 262 F.R.D. 424, 429 (D.N.J. 2009).  Here, the known disclosures are communications between Millstone and its counsel.  "As in *Peterson*, these communications 'warranted a significant level of scrutiny.'  Thus, even assuming that the extent of the [moving parties'] disclosures was quite small–1% of their total document production-this fact would be balanced by the nature of the disclosures at issue." *Id.*  Therefore, the Court finds that this factor weighs in favor of a waiver.

The next factor, the extent of the disclosure, weighs in favor of a finding of waiver because Plaintiffs claim that the documents at issue were fully disclosed.  The fourth factor, delay and

efforts taken to rectify the disclosure, also weigh in favor of a waiver.  Millstone was aware of Plaintiffs possession of Exhibit D since at least September 23, 2021, the date of Ms. D'Andrea's deposition.  No objections were raised at that time.

Finally, the Court finds that under the circumstances of this case, the interest of justice favors finding that a waiver occurred.  The Court finds, like in *Ciba–Geigy*, "the interests of justice would be served by a finding of waiver, where, as here, a party's negligence has resulted in the inadvertent production of a privileged document."  916 F.Supp. at 414.  Here, Millstone had ample opportunity to object to Plaintiffs' use of Exhibits D and E throughout the course of this litigation, however, Millstone failed to do so.

Despite Plaintiffs violation of RPC 4.4(b), the Court, on balance, finds that this fact does not overcome Millstone's failure to proffer an objection when it first learned of Plaintiffs' possession of Exhibits D and E.  Therefore, Millstone is not entitled to the return of any of the documents at issue, nor is Millstone entitled to any other relief including striking any references to Exhibits D and E, or disqualification of Plaintiffs' counsel.  Millstone's Cross-Motion is **DENIED**.

### C.  Millstone's Motion to Seal.

Millstone filed the Motion to Seal on April 7, 2022, requesting that Exhibits D and E be sealed on the basis of attorney-client privilege.  (Docket Entry No. 40.)  Plaintiffs' opposition was filed on April 18, 2022, arguing that Millstone does "not demonstrate that they meet the standard for restricting judicial access to the public," and also arguing that "Millstone's motion goes beyond Local Civil Rule 5.3(c)(2)(ii)'s window for restricting public access."  (Docket Entry No. 42.) "[T]o prevail on a Motion to Seal court records, a movant bears the burden to show that the interest in secrecy outweighs the presumption of access.  In doing so, the burdened party must describe a

specific injury that public access will inflict, and the injury must be balanced against the 'strong common law presumption of access.'" *Darkins v. Cont'l Airlines, Inc.*, No. 2:10-CV-6165-ES-SCM, 2013 WL 3285049, at *3 (D.N.J. June 27, 2013) (citations omitted).

Local Civil Rule 5.3 provides that "a request . . . to file materials under seal . . . shall ordinarily be made . . . by a single, joint consolidated motion on behalf of all parties . . . [that] shall include all information required by [Local Civil Rule 5.3](c)(3) . . . ." Under Rule 5.3, within 21 days of the filing of the material sought to be sealed, "the parties shall confer in an effort to narrow or eliminate the materials or information that may be the subject of a motion to seal." L.Civ.R. 5.3(c)(2). The joint motion is to be filed within 14 days following the completed briefing of the materials sought to be sealed. L.Civ.R. 5.3(c)(2). In addition, the motion is to include an index (substantially in the form of Appendix U to the Local Civil Rules) listing each individual item sought to be sealed/redacted, the basis for sealing/redacting that particular item, the clearly defined and serious injury that would result if relief is not granted, why a less restrictive alternative (e.g., redaction) is not available, and the basis for any opposition, if any. L.Civ.R. 5.3(c)(3). Further, a Proposed Findings of Fact and Conclusions of Law shall be submitted with the motion papers in the proposed order required by L.Civ.R. 5.3(c)(6). *Id.*

Here, Millstone cannot prove that the interest in secrecy outweighs the presumption of access because the Court has already found that Millstone waived its privilege as to Exhibits D and E. Therefore, Millstone's motion is **DENIED**.

**III.    Conclusion**

For the reasons stated above, Plaintiffs' motion to amend is **GRANTED** in part and **DENIED** in part, Millstone's Cross Motion and Motion to Seal is **DENIED**.  An appropriate Order follows.

Dated: June 13, 2022

<u>s/Tonianne J. Bongiovanni</u>
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**